COMSTOCK v. McDONALD.

PARTNERSHIP—DEATH OF PARTNER—RECEIVERS.

> A receiver of partnership property should not be appointed against the objection of surviving partners, at the solicitation of the representatives of a deceased partner, against whom a suit has been instituted by the survivors for an accounting and to enable them to purchase the share of the deceased, where the survivors are abundantly responsible, and able to do justice on a final accounting, and there is no tangible evidence that they are wronging the representatives of the deceased.

Appeal from Alpena; Kelley, J. Submitted June 15, 1897. Decided July 13, 1897.

Bill by Andrew W. Comstock and William B. Comstock, surviving partners of the firm of Comstock Brothers, against George R. McDonald, administrator of the estate of Joseph B. Comstock, deceased, and others, for an accounting. From an order appointing a receiver upon the application of defendants, complainants appeal. Reversed.

Previous to 1886, the complainants and one Bewick constituted a copartnership doing business at Alpena under the name of Bewick, Comstock & Co. Their business was extensive, and included lumbering operations (including the running of sawmills), banking, the ownership of vessels, etc. The defendants assert that an inventory of the property owned by this firm, or, more properly speaking, its successor, amounted in 1894 to the sum of $2,000,-000. In the year 1886 an agreement was made by which Bewick was to sell his one-third interest in this concern and its business to his two partners for the sum of $300,-000, from which we may infer that $1,000,000 was not far from the value of the assets at that time. At this time

the complainants had a younger brother, Joseph B. Comstock, who was not engaged in business for himself, but was in their employ as bookkeeper, and it was arranged that he should take one-ninth interest in the new copartnership to be formed and carried on under a firm name after the retirement of Bewick. Accordingly the three brothers purchased the interest of Bewick for $300,000. It is in connection with this transaction that one of the principal questions in the case arises, it being contended on behalf of the defendants that this sum of $300,000 was to be paid for by the partnership from its profits, while the complainants contend that each partner was to be charged with one-third of the purchase price, though it was to be paid for by the copartnership from its assets.

In August, 1894, Joseph B. Comstock died, and Andrew W. Comstock was appointed administrator and guardian of the children. William B. Comstock was appointed one of the appraisers, and aided in making the inventory mentioned, and an allowance of $200 a month was made by the probate court, which has been paid to the widow. Subsequently negotiations were had between the complainants and the widow with a view to the purchase by them of the interest of the estate of Joseph in the business and property, and an offer of $100,000 in cash was made. The parties were unable to agree, and A. W. Comstock having resigned as administrator, and the defendant McDonald having been appointed as his successor, the complainants filed the bill of complaint in this cause, setting up the existence of the partnership, the character and extent of its business and property, the death of Joseph, the appointment of the administrator, and the futile effort at a settlement, and alleging that the best interests of all concerned, considering the stringency of the times, would be conserved if the assets of the firm should be offered for sale in some way that would permit the complainants to buy. The bill prayed for an accounting, and a decree that the real estate, which stood in the individual names of the members of the firm, was partnership property, and

that a receiver be appointed to take possession of all of the partnership property, and, under the direction of the court, to sell or dispose of the same, in mass or in parcels, and that the complainants be allowed to become purchasers. In this connection it should be stated that the bill alleges that the widow's claim of value was excessive, and that she denied any liability on the part of the estate for the purchase of its share in the concern, and the bill prayed that this question might be settled.

The answer of the administrator alleges that the widow and children have very little property, and therefore that it would be to their interest to have the property sold in parcels, and that a receiver should be appointed to take charge of the assets of the copartnership until the property can be sold. It proceeds to allege delay and fraud in settling the estate, to the injury of the widow and heirs of Joseph. Subsequently a petition was made alleging that the complainants were still carrying on the business of the copartnership, and had made no effort since filing the bill to determine petitioners' interests, but ignored their interests, and continued the business with the assets, without endeavoring in any manner to close out said business, or determine the interests of the petitioners therein; that an examination of the books showed that they were treating the assets of the copartnership as their own. It also states in detail certain charges, which, in effect, debit the estate with amounts paid by the firm upon the purchase price of Joseph's interest, with interest on the amount advanced by the firm; also that they have charged themselves with large sums which they have withdrawn from the business, and with these moneys have bought large tracts of valuable land, and that they have admitted one Jolly to an interest in the profits of the business. The petition, which was filed October 2, 1896, prayed the appointment of a receiver and an injunction. It was verified on information and belief by the widow, and counsel appended an affidavit that he had examined the books, and heard the testimony of the complainants,

taken under the statute in behalf of the petitioners, and stating his conclusion therefrom to the effect that at some time, not stated, after the death of Joseph, the complainants opened a new set of books; that all moneys collected by them as survivors were appropriated by them, each being charged with one-half; that in January, 1895, they charged $99,000 to the estate of Joseph for which there was no consideration or transaction except a claim of complainants which antedated the charge more than eight years, and that at the same time said complainants, from the profits of the concern, took a credit aggregating more than $185,000, and that between November 19, 1895, and August 1, 1896, they took credits from the firm of over $150,000 more.

Thereupon the court made an order appointing the Union Trust Company of Detroit receiver of all of the partnership property (describing it), and requiring a just and accurate statement of all collections made and other transactions of said business since the death of Joseph, within 20 days. From this order an appeal was taken to this court.

*Frank Emerick*, for complainants.

*McDonell & Hall*, for defendants.

HOOKER, J. (*after stating the facts*). The evidence upon which this order was made was that of the complainants, taken by the defendants under the statute, certain documentary evidence from the probate court, and the testimony of Bewick and his son, taken by deposition on behalf of the complainants. The testimony is not voluminous, and the facts do not seem to be disputed, except upon the question of the intestate's purchase. In this particular, upon the present record, we think the claim of the widow and administrator is not sustained. It is based on what they seem to claim was a gift by the complainants to Joseph of one-third interest in their two-thirds of the business and property on condition that

Joseph would purchase one-ninth, and have it charged to him on the books, which charge, by the way, was not made. This claim is sought to be sustained by invoking the aid of the statute prohibiting the parties to testify, and by treating the testimony of the Bewicks as hearsay. This cause is not here upon final hearing, as we judge that it might easily have been, for it was, or might have been, at issue in December, 1895, and it is stated without denial that it had passed the September term, 1896, against the opposition of the complainants, and this petition was filed a month later.

To the contention that this was a consent order, the record is a complete answer. *First*, the parties were in court contesting it; and, *second*, the bill did not ask a preliminary order, but only after a full hearing and accounting, which apparently the complainants were willing to have taken. It is evident that this bill was filed— *First*, to settle this claim made on behalf of Joseph's estate; and, *second*, to enable the purchase by the complainants upon some fair basis of a business which they had built up by years of hard work, and which they might naturally desire to continue. We may well take notice of the difficulties of closing out a business of this kind, in the strict sense of selling and scattering its various assets, whose chief value consists in the fact of their aggregation, under competent management; difficulties which are intensified by the financial conditions which have prevailed for a few years past. We do not overlook the natural proclivity to purchase at a low price, and realize that surviving partners may have opportunities to perpetrate wrongs upon the representatives of deceased partners, but we think there should be more tangible evidence of it than there is in this case before taking away their control, and placing it in the hands of others. The complainants appear to be abundantly responsible, and no doubt can be made to do justice upon a final accounting. If wise counsel prevail, it would seem that the parties might adjust their rights upon a fair basis without the vexation

and loss of protracted litigation. If they cannot, a fair accounting can doubtless be had through the courts.

The order appointing a receiver is reversed and set aside, with costs of both courts.

GRANT, MONTGOMERY, and MOORE, JJ., concurred. LONG. C. J., did not sit.